UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUWANA LAMBERT,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>        Defendant. | Case No. CV 12-2984-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

On April 5, 2012, plaintiff Tuwana Lambert filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the

Administrative Law Judge ("ALJ") properly rejected the opinion of plaintiff's treating physician, Dr. Steven Popkow; (2) whether the ALJ erred in failing to find that plaintiff's depression constitutes a severe impairment; and (3) whether the ALJ's residual functional capacity ("RFC") finding and step five determination fail to account for all of plaintiff's limitations and are thus not supported by substantial evidence. Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 2-7; Memorandum in Support of Defendant's Answer at 1-26.

Having carefully studied, inter alia, the parties' written submissions and the Administrative Record ("AR"), the court concludes that, as detailed herein, there is substantial evidence in the record, taken as whole, to support the ALJ's decision. First, the ALJ properly rejected Dr. Popkow's opinion. Second, the ALJ's failure to find that plaintiff's depression was a severe impairment was proper. And third, the ALJ's RFC assessment and step five determination properly accounted for all of plaintiff's impairments. Therefore, the court affirms the Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-one years old on the date of her October 28, 2010 administrative hearing, completed two-and-a-half years of college. *See* AR at 22, 30, 42. Her past relevant work includes employment as an administrative clerk. *Id.* at 49.

On May 7, 2009, plaintiff applied for DIB, alleging that she had been disabled since June 27, 2008, due to asthma, migraines, tendonitis, fatigue, and pain in her left knee and right elbow. *Id.* at 22, 56, 59, 124. Plaintiff's application, which was designated as a "prototype" case,[1] was denied on October

---

[1] A "prototype case" designates a single decision maker to make the initial determination and eliminates the reconsideration step in the administrative review

15, 2009, after which she filed a timely request for a hearing. *Id.* at 22, 56, 59-63, 65-66.

On October 28, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 40-50. The ALJ also heard testimony from Gregory S. Jones, a vocational expert ("VE Jones"). *Id.* at 49-55. On November 2, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 22-32.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability, June 27, 2008. *Id.* at 24.

At step two, the ALJ found that plaintiff suffers from the following severe impairments: asthma; strain and sprain of the cervical spine; degenerative joint disease of the right shoulder; right elbow strain and sprain; strain of the right wrist; migraine headaches; and mood disorder, not otherwise specified ("NOS"). *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, do not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 25.

The ALJ then assessed plaintiff's RFC,[2] and determined she has the RFC to perform light work, with the limitations that plaintiff: "is precluded from more than occasional overhead reaching with the right upper extremity, is limited to frequent but not constant handling and fingering with the right upper extremity,

---

process. *See* 20 C.F.R. §§ 404.906(a) & 416.1406(a).

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (as amended). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

may perform frequent but not constant reaching in all other directions with the right upper extremity, must avoid concentrated exposure to fumes, odors, dust, gases, and other environmental irritants, and is limited to jobs involving only simple instructions and decisions and simple changes in the work environment." *Id.* at 26.

The ALJ found, at step four, that plaintiff is unable to perform any past relevant work. *Id.* at 30.

At step five, based upon plaintiff's RFC, vocational factors, and the vocational expert's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including general cashier, and housekeeping cleaner. *Id.* 30-31. Consequently, the ALJ concluded that plaintiff does not suffer from a disability as defined by the Social Security Act. *Id.* at 22, 32.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4, 17-18. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a

preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Properly Rejected the Opinion of Plaintiff's Treating Physician

Plaintiff contends that the ALJ improperly discredited the opinion of her treating physician, Dr. Steven Popkow. Pl.'s Mem. at 3-4. The court disagrees, for the reasons discussed below.

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1527(c) (2012) (prescribing the respective weight to be given the opinions of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a

5

treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830 (citation omitted); *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted).

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons." (citation omitted)). "Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

Here, the ALJ "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] his interpretation thereof," and ultimately gave greater weight to the opinions of Drs. Kamran Aflatoon, Albert Hakimian, and Seung Ha Lim concerning plaintiff's physical impairments, and Drs. Ernest Bagner and R. Tashjian regarding plaintiff's mental impairments, and discounted the opinion of Dr. Popkow. *See Magallanes*, 881 F.2d at 751 (internal quotation

marks and citation omitted); AR at 26-30.  Having duly reviewed the record and the parties' written submissions, the court finds that the ALJ properly rejected the opinion of Dr. Popkow regarding plaintiff's RFC.

First, the ALJ rejected Dr. Popkow's opinion because he "had merely completed a form with boxes to be checked off, but provided no detailed explanation to support the[] limitations."  AR at 27.  This reason is supported by substantial evidence in the record (*see id.* at 369-74, 376, 378-380, 382, 384, 406-11), and constitutes a specific and legitimate reason for rejecting Dr. Popkow's medical opinion.  *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physicians' opinions in part because they were in checklist form with no supporting objective evidence); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ . . . permissibly rejected [psychological evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions.").

Second, the ALJ found that "the objective evidence fails to support the limitations imposed by Dr. Popkow."  AR at 29.  An ALJ may properly discredit treating medical opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  *See Batson*, 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings" (citation omitted)).  Here, Dr. Popkow opined, inter alia, that:  (1) due to moderate persistent asthma, plaintiff can:  stand and/or sit for 30 minutes at one time; work for a maximum of two hours per day; and frequently lift ten pounds (AR at 376); (2) due to her left knee impairment, plaintiff can:  stand and/or sit for 15 minutes at one time; work for a maximum of two hours per day; and lift ten pounds on a frequent basis (*id.* at 382); (3) due to her hand and wrist problems: plaintiff can perform fine and gross manipulation on an occasional basis bilaterally; and

plaintiff is unable to perform fine/gross manipulation effectively (*id.* at 384); (4) due to severe migraine headaches, plaintiff: is "[i]ncapable of even 'low stress' jobs"; "need[s] to take unscheduled breaks during an 8[-]hour working day" on a "weekly basis"; and "is likely to be absent from work as a result of [her] impairments or treatment . . . [m]ore than four times a month" (*id.* at 369, 372-73); (5) due to depression, plaintiff is markedly impaired in her ability to: "maintain attention and concentration for extended periods"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and "interact appropriately with the general public" (*id.* at 378-79); and (6) due to depression, anxiety and migraine headaches: plaintiff's medications reduce her alertness and render her unable to interact with co-workers; and plaintiff experiences "[f]our or [m]ore" episodes of decompensation within a 12-month period (*id.* at 406, 410).  According to Dr. Popkow, plaintiff is "[d]isabled" and "unable to work." *Id.* at 334.  Yet none of the records from at least March 2007 through October 2010 documenting Dr. Popkow's treatment of plaintiff and his assessment of plaintiff's functional capacity provide direct, specific, and objective support for the above-described physical and/or mental limitations. *See, generally,* AR at 164-71, 324-84, 406-11.  In fact, Dr. Popkow documented no mental status examination findings or other observations concerning plaintiff's mental impairments, and consistently reported "n[orma]l" physical examination results. *See id.* at 164-171, 324-334.

      Moreover, Drs. Aflatoon, Hakimian and Lim made clinical findings contradicting Dr. Popkow's opinion concerning plaintiff's physical limitations.  For example, Dr. Aflatoon, an orthopedic surgeon, treated plaintiff four times between September 2007 and February 2008, and reported largely normal physical examination findings. *See id.* at 258, 266, 272, 281 (normal gait with no evidence of antalgia; no evidence of foot drop; plaintiff able to walk on tip toes and heels, and able to squat down without difficulty); 259, 266, 272, 281-82 (no loss of the

8

normal cervical lordosis or any other abnormal curvatures; and/or no complaints of increased pain toward terminal range of motion in cervical spine); 259-60, 266-68, 272-74, 281-83 (cervical and thoracic paraspinal musculature not tender to palpation; normal range of motion in shoulder, elbows and wrist/hands; plaintiff neurologically intact); 257 (normal cervical MRI).

Similarly, Dr. Hakimian, an orthopedic surgeon, performed an orthopedic evaluation and review of plaintiff's medical history on April 19, 2010, in conjunction with her California Worker's Compensation claim. *Id.* at 385-403. Dr. Hakimian noted that plaintiff's clinical presentation was "objectively unremarkable, with the exception of diminished active range of motion of the right shoulder, elbow, and wrist, which may or may not be objective." *Id.* at 395; *see id.* at 389-390, 394-96 (finding full muscle strength and intact sensation in plaintiff's upper extremities; no localized tenderness in shoulders/wrists; negative impingement and Hawkin's signs; normal EMG and nerve conduction study results, with no electrical evidence of carpal tunnel syndrome or any other focal entrapment neuropathy; unremarkable cervical spine MRI; and right shoulder MRI showing "subclinical" mechanical impingement).

Finally, Dr. Lim, an internist, performed a consultative physical examination of plaintiff on August 24, 2009, at the state agency's request. *Id.* at 218-222. Dr. Lim reported largely normal physical examination findings. *See id.* at 219-21, 223 (clear lung fields without any wheezing, rales or rhonchi; normal left knee x-ray; decreased left knee range of motion, but with poor effort; pain on motion but normal range of motion of right elbow/wrist; negative Phalen's and Tinel's signs in right upper extremity; pain on motion but normal range of motion of neck/back; and no neurological abnormalities).

In addition, Drs. Bagner and Tashjian made findings indicating that plaintiff's mental impairments in functioning are mild to moderate and found no episodes of decompensation or evidence of side effects from plaintiff's

9

psychotropic medications, contrary to Dr. Popkow. *Id.* at 212-15, 226-39. Specifically, Dr. Bagner, a psychiatrist, performed a consultative psychiatric examination of plaintiff on August 18, 2009 (*id.* at 212-15), and diagnosed plaintiff with a "[m]ood disorder, [NOS]" associated with "[m]ild to [m]oderate" impairments in functioning. *See id.* at 213-14 (noting tearful affect; intact and coherent speech, with moderate decrease in rate, rhythm, and volume; tight thought processes, with no flight of thought, looseness of association, thought blocking or distractibility; normal reality contact, with no evidence of auditory/visual hallucinations or paranoid/grandiose delusions; and no evidence of suicidal/homicidal ideation). Similarly, after reviewing the record including Dr. Bagner's report, Dr. Tashjian, a state agency psychiatrist, completed a Psychiatric Review Technique form (*id.* at 226-36), and a Mental Residual Functional Capacity Assessment (*id.* at 237-39), on September 30, 2009. Dr. Tashjian affirmed Dr. Bagner's opinion that plaintiff has a mood disorder, NOS (*id.* at 229) that results in mild to moderate impairments in functioning (*id.* at 234). Moreover, Dr. Tashjian found insufficient evidence of episodes of decompensation. *Id.* In sum, substantial evidence supports the ALJ's finding that Dr. Popkow's opinions are unsubstantiated by the objective medical evidence.

Third, the ALJ found that "Dr. Popkow . . . appears to have recited [plaintiff]'s subjective complaints [concerning medication side effects] and took them at face value." *Id.* at 29-30. Accordingly, the ALJ concluded that "the side effects are not found to significantly affect [plaintiff]'s ability to perform basic work-related activities." *Id.* at 30. The ALJ may properly reject a medical opinion when that opinion "was not supported by clinical evidence and was based on [plaintiff]'s subjective complaints." *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, Dr. Popkow's treatment notes make no mention of plaintiff's side effects (*see, generally,* AR at 164-171, 324-334), which he references only once in a Mental Impairment Questionnaire dated October 1, 2010.

*See id.* at 406, 411.  Moreover, there is no other evidence in the record that plaintiff experienced side effects.  *See, generally, id.* at 1-411.  In particular, as the ALJ noted (*id.* at 29), neither Dr. Bagner nor Dr. Tashjian reported any side effects.  *Id.* at 212-15, 226-39.  In sum, the ALJ properly rejected Dr. Popkow's opinion on this ground.

Fourth, the ALJ concluded that "[t]he opinions of both Drs. Hakimian and Aflat[o]on, specialists in the field of orthopedics, are entitled to greater weight than those of Dr. Popkow, a family practitioner."  *Id.* at 29.  Dr. Aflatoon opined that there was "no disability in this case," released her to her regular work duties, and expressly denied any work restrictions.  *Id.* at 261.  Moreover, Dr. Hakimian opined that "[plaintiff] could safely return to her former position if she wished to, had she not retired for reasons unrelated to orthopaedic injury" (*id.* at 398), and that "[plaintiff] requires no further formal evaluation or physician-supervised medical care by reason of orthopaedic factors at the present time."  *Id.* at 399.  In light of Drs. Hakimian's and Aflatoon's specializations in the field of orthopedics and the lack of support for Dr. Popkow's opinions in his own records and in the medical evidence as a whole, the ALJ properly concluded that the opinions of Drs. Hakimian and Aflatoon are entitled to more weight.  *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record.") (quoting 20 C.F.R. § 404.1527; brackets in original)).

Finally, the ALJ found that "the opinions of Drs. Bagner and Tashjian,

11

specialists in the field of psychiatry, are also entitled to greater weight than those of Dr. Popkow." AR at 29. Dr. Bagner opined that plaintiff would have no limitation interacting with supervisors, peers, or the general public; zero to mild limitations maintaining concentration and attention and completing simple tasks; mild limitations completing complex tasks; and mild to moderate limitations handling normal stresses at work and completing a normal work week without interruption. *Id.* at 215. For his part, Dr. Tashjian opined that Plaintiff was moderately limited in her ability to carry out detailed instructions and respond appropriately to changes in a work setting; not significantly limited in all remaining categories of functioning; and plaintiff is capable of performing simple work. *Id.* at 237-39. In light of Drs. Bagner and Tashjian's specializations in the field of psychiatry and the lack of support for Dr. Popkow's opinions in his own records and in the medical evidence as a whole, the ALJ properly concluded that the opinions of Drs. Bagner and Tashjian are entitled to more weight. *See Orn*, 495 F.3d at 631.

In sum, the ALJ properly rejected Dr. Popkow's opinion and accorded greater weight to the opinions of Drs. Hakimian, Aflatoon, and Lim concerning plaintiff's physical limitations, and Drs. Bagner and Tashjian with regard to plaintiff's mental impairments. AR at 26-30; *see Magallanes*, 881 F.2d at 751 (examining physician's opinion may constitute substantial evidence if the "nontreating physician relies on independent clinical findings that differ from the findings of the treating physician" (internal quotation marks and citations omitted)).

**B.** **The ALJ Properly Found That Plaintiff's Depression Is Not a Severe Impairment**

Plaintiff claims that the ALJ erred at step two in failing to find that plaintiff's depression was a severe impairment. Pl. Mem. at 2-3. According to plaintiff, the ALJ erred because plaintiff's "[depression] symptoms would likely

have an impact on her ability to perform work-related activities that is more than minimal." *Id.* at 3. The court disagrees, for the reasons discussed below.

The inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). The step two inquiry is defined as "'a de minimis screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001, *as amended* Aug. 9, 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). "At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90. "Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290. The ALJ is also "required to consider the claimant's subjective symptoms . . . in determining severity." *Id.*

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."[3] *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28). "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or

---

[3] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting[.]" *Edlund*, 253 F.3d at 1159 (internal citations omitted).

13

combination of impairments." *Id.* In addition, "'if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* (quoting SSR 85-28) (brackets omitted).

Plaintiff contends that the ALJ erred at step two in failing to find that plaintiff's depression was a severe impairment. Pl. Mem. at 3-4; *see* AR at 24 (the ALJ found, at step two, that plaintiff's severe mental impairment consisted of mood disorder, NOS). In support of the claim that plaintiff's depression qualifies as severe, however, plaintiff relies only on the opinion of Dr. Popkow and plaintiff's subjective allegations. *See* Pl. Mem. at 3. But as noted above, Dr. Popkow's opinion was properly discredited by the ALJ. *See supra*. Moreover, the ALJ discredited plaintiff's testimony (AR at 29-30), and plaintiff did not take issue with the ALJ's credibility determination. *See, generally,* Pl. Mem. at 2-7. Indeed, the ALJ's step two finding that plaintiff suffers from the severe mental impairment of mood disorder, NOS, is supported by substantial evidence in the record. *See* AR at 214 (Dr. Bagner diagnosed plaintiff with a "mood disorder, NOS"), 229 (Dr. Tashjian affirmed Dr. Bagner's diagnosis of mood disorder, NOS). Accordingly, there is no merit to this claim.

C. **The ALJ's RFC and Step Five Determinations Are Supported by Substantial Evidence**

Plaintiff contends the ALJ's RFC and step five findings are not supported by substantial evidence because the ALJ failed to account for all of plaintiff's impairments and limitations in formulating the RFC. Pl. Mem. at 4-7. The court disagrees, for the reasons discussed below.

**1. RFC Determination**

As previously noted, a claimant's RFC is what she can still do despite her physical, mental, nonexertional, and other limitations. *Mayes*, 276 F.3d at 460;

14

*see also Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)"). In determining a claimant's RFC, the ALJ is required to "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe." 20 C.F.R. §§ 404.1545(e) & 416.945(e); *see Carmickle v. Comm'r*, 533 F.3d 1155 (9th Cir. 2008). The ALJ evaluates "all of the relevant medical and other evidence," as well as a claimant's testimony, in making this assessment. 20 C.F.R. §§ 404.1545(a) & 416.945(a); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Limitations supported by substantial evidence in the record must be incorporated into the RFC. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Here, the ALJ's physical RFC limiting plaintiff to a range of light work (*see* AR at 26) is more restrictive than the opinions of Drs. Aflatoon and Lim, and at least as restrictive as Dr. Hakimian's opinion. *See id.* at 221-22 (Dr. Lim limited plaintiff to a range of medium work, i.e., to carrying 50 pounds occasionally and 25 pounds frequently); 261 (Dr. Aflatoon opined no physical capacity limitations); 49-50, 398 (Dr. Hakimian opined that "[plaintiff] could safely return to her former position if she wished" and VE Jones testified that plaintiff's past relevant work was performed at least at the light exertional level). Moreover, regarding plaintiff's mental limitations, the ALJ restricted plaintiff to "jobs involving only simple instructions and decisions and simple changes in the work environment." *Id.* at 26. The ALJ's mental RFC properly accounted for the opinions of Drs. Bagner and Tashjian. *See id.* at 215 (Dr. Bagner opined that plaintiff has zero to mild limitations maintaining concentration and attention and completing simple tasks; mild limitations completing complex tasks; and mild to moderate limitations handling normal stresses at work and completing a normal work week without interruption); 237-38, 239 (Dr. Tashjian opined that plaintiff was moderately limited in her ability to carry out detailed instructions and respond appropriately to

15

changes in a work setting, and that plaintiff is capable of performing simple work). In sum, the ALJ's RFC properly accounted for the relevant medical evidence in the record.

To the extent plaintiff claims that the RFC fails to account for plaintiff's subjective symptom allegations, plaintiff's argument is without merit. *See* Pl. Mem. at 4-7. As previously noted, the ALJ rejected plaintiff's subjective testimony (*see id.* at 29-30), and plaintiff did not challenge the ALJ's credibility determination. *See, generally,* Pl. Mem. at 2-7. For example, there is no merit to plaintiff's claim that the ALJ erred in finding plaintiff capable of light work because her shoulder pain precludes lifting and/or carrying of objects and light work "require[s] use of arms and hands to grasp and to hold and turn objects." *See* Pl. Mem. at 5. No doctor has precluded plaintiff from lifting and/or carrying. *See* AR at 221-22 (Dr. Lim opined that plaintiff was capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently); 261 (Dr. Aflatoon opined no lifting/carrying limitations); 398 (Dr. Hakimian imposed no lifting/carrying restrictions and opined that "[plaintiff] could safely return to her former position if she wished"). Even Dr. Popkow, whose opinion was properly discredited by the ALJ, opined that plaintiff can lift ten pounds on a frequent basis. *See id.* at 376, 382. Accordingly, to the extent plaintiff testified that she is unable to lift and/or carry objects (*see id.* at 43-44; Pl. Mem. at 5), the RFC properly fails to reflect plaintiff's rejected testimony. Likewise, plaintiff's claim that the ALJ failed to account for the effects of plaintiff's multiple medications (*see* Pl. Mem. at 7) is unavailing. As noted above, plaintiff offered no objective medical evidence of the alleged side effects, *see supra*, and appears once again to rely entirely on her own rejected testimony. *See Thomas*, 278 F.3d at 960 (ALJ did not err in excluding the side effects caused by plaintiff's medication where she offered no objective evidence of these side effects and the ALJ properly rejected her testimony).

Moreover, plaintiff's claim that the ALJ's RFC determination "improperly

disregarded part of [Dr. Bagner]'s opinion" (Reply at 1) is unavailing. As an initial matter, plaintiff raises this claim for the first time in her Reply, which is not the proper pleading to raise additional grounds for relief. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("arguments raised for the first time in a reply brief are waived"). In any event, the claim is without merit.

The sentence in Dr. Bagner's opinion that plaintiff claims the ALJ disregarded states, in its entirety: "She would have mild to moderate limitations handling normal stresses at work and completing a normal workweek without interruption." AR at 215. Plaintiff concedes that the RFC limitation to "jobs involving only simple instructions and decisions and simple changes in the work environment" properly accounts for the first part of the sentence in Dr. Bagner's opinion, that plaintiff exhibits "mild to moderate limitations handling normal stresses at work." Reply at 1-2; *see* AR at 26, 215. But according to plaintiff, the RFC fails to account for the second part of the sentence in Dr. Bagner's opinion, that plaintiff also experiences "mild to moderate limitations . . . completing a normal workweek without interruption." Reply at 2; *see* AR at 215. The court disagrees, and finds that the RFC's limitation of plaintiff to simple work *also* adequately reflects consideration by the ALJ of Dr. Bagner's finding that plaintiff would have mild to moderate limitations completing a normal workweek without interruption. Significantly, despite this mild to moderate limitation, Dr. Bagner also opined that plaintiff "would have zero to mild limitations maintaining concentration and attention and completing *simple* tasks." AR at 215 (emphasis added). Accordingly, the RFC restriction to jobs involving "simple instructions and decisions and simple changes in the work environment" appears to adequately capture the tasks plaintiff can do, despite all the limitations opined by Dr. Bagner. *See, e.g., Sabin v. Astrue*, 337 Fed. App'x 617, 620-21 (9th Cir. 2009) (ALJ did not err in determining that, despite moderate difficulties in concentration, persistence, or pace, the claimant could perform "simple and repetitive tasks on a

17

consistent basis"); *Bickford v. Astrue*, 2010 WL 4220531, at * 11 (D. Or. 2010) ("[S]o long as the ALJ's decision is supported by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace.").

In sum, the ALJ's assessed RFC properly accounts for all of plaintiff's impairments and limitations.

### 2. Step Five Analysis

Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations (*Bray v. Astrue*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 956), and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir.1999). Here, the ALJ included all of plaintiff's limitations as found by Drs. Aflatoon, Hakimian and Lim concerning plaintiff's physical impairments, and as found by Drs. Bagner and Tashjian regarding plaintiff's mental impairments, in the hypothetical question to VE Jones that reflected the RFC actually found by the ALJ. *See* AR at 26, 50-53. VE Jones's response to the hypothetical question was the basis for the ALJ's step five determination that plaintiff can perform other jobs in the national economy. *See id.* at 31, 50-53. For this reason, the ALJ's step five determination is supported by substantial evidence.

Plaintiff contends that the ALJ did not fully consider VE Jones's favorable testimony. Pl. Mem. at 7. VE Jones testified that "a hypothetical individual [the] claimant's age, education, and work experience who had to take unscheduled naps two to three times a day for 15 to 20 minutes" could "[n]ot [perform any work on] a full-time basis." AR at 53-54 (testifying also that "a hypothetical individual the claimant's age, education, and work experience, [who could not] . . . because of emotional difficulties . . . maintain concentration, persistence and pace five days a week, eight hours a day at the level of substantial gainful activity" could not

perform "any work"). But this testimony by VE Jones was not based on any credited medical evidence in the record. *See, generally, id.* at 1-411. Rather, it was based on a hypothetical that strictly reflected plaintiff's subjective symptom allegations. *See id.* at 47. As previously noted, plaintiff's testimony was rejected by the ALJ (*id.* at 29-30), and plaintiff does not question the ALJ's credibility finding. *See, generally,* Pl. Mem. at 2-7.

Plaintiff also claims that her limitation to "occasional overhead reaching" amounts to a "special situation" under SSR 83-12 consisting of the "los[s] [of] use of an upper extremity." Pl. Mem. at 5. According to plaintiff, given that the ALJ has restricted her to a limited range of light work, and that she would be found disabled at a sedentary range of exertion, "SSR 83-12 provides that the lower [Grid] rule which directs a finding of disability [at the sedentary level] should be applied." *Id.*; *see Heckler v. Campbell*, 461 U.S. 458, 461-62, 103 S. Ct. 1952, 1954-55 (1983) (The Grids "establish[] through rulemaking the types and numbers of jobs that exist in the national economy"; where a claimant's qualifications match the criteria of a particular rule, the Grids "direct a conclusion as to whether work exists that the claimant could perform."). This argument is specious. *See* SSR 83-12 (explaining that loss of use of an upper extremity applies to "person[s] who ha[ve] lost the use of an arm or hand because of amputation, paralysis, etc.", i.e., to the "[l]oss of *major* use of an upper extremity") (emphasis added)). In contrast to persons who have lost the use of an upper extremity, plaintiff here retains the ability to occasionally reach overhead, and to frequently reach in all other directions with the right upper extremity. *See* AR at 26. Moreover, plaintiff is able to perform frequent handling and fingering with her right upper extremity. *See id.* In sum, plaintiff's right upper extremity limitation cannot be likened to the loss of an arm/hand because of amputation or paralysis. *See* SSR 83-12.

Finally, plaintiff contends that the ALJ erred in failing to "cite the numbers of jobs in existence that would be available to plaintiff." Pl. Mem. at 7; *see*

19

*Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989) (once a plaintiff has established an inability to perform past relevant work, the burden shifts to the Commissioner, at step five, to show that plaintiff "can perform other substantial gainful work that exists in the national economy"). Plaintiff provides no authority for her claim that the ALJ must "cite" the number of jobs in existence as identified by the vocational expert. In any event, plaintiff does not contest the ALJ's finding based on VE Jones's testimony that there *are* a significant number of jobs available to plaintiff. *See, generally,* Pl. Mem. at 7; *see* AR at 30-31, 50-52; 20 C.F.R. §§ 404.1566(b) & 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications."). Accordingly, any error by the ALJ in failing to "cite" the number of jobs available would be harmless. *See Robbins*, 466 F.3d at 885 (explaining that an error is harmless "when it was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotation marks and citation omitted)); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

For these reasons, plaintiff's claims of error in the ALJ's RFC and step five determinations lack merit.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 20, 2013

_____
SHERI PYM
United States Magistrate Judge